```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          :    SUPERSEDING INDICTMENT

           - v. -                 :    S2 16 Cr. 542 (WHP)

JONATHAN ROPER,                   :

                                  :
           Defendant.
                                  :
- - - - - - - - - - - - - - - - - - x
```

## COUNT ONE
### (Conspiracy to Violate the Anti-Kickback Statute)

The Grand Jury charges:

### Background

1. At all relevant times, JONATHAN ROPER, the defendant, was employed by a publicly traded pharmaceutical company based in Arizona ("Pharma Company-1"). From in or about March 2013 through in or about August 2013, ROPER was employed as a Specialty Sales Professional ("SSP") by Pharma Company-1 and was responsible for a sales territory that included New York, New York. From in or about September 2013 through June 2015, ROPER was employed by Pharma Company-1 as a District Sales Manager. As a District Sales Manager, ROPER supervised numerous SSPs who covered a sales territory that included Manhattan, upstate New York, Connecticut, Rhode Island, New Hampshire, and Massachusetts, among other locations. In or about July 2015, ROPER was promoted by Pharma

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6|1|17

Company-1 to the position of Field Sales Director for the Northeast sales territory. In or about December 2015, Pharma Company-1 terminated ROPER's employment.

2. At all relevant times, Pharma Company-1 manufactured a fentanyl-based sublingual spray (the "Fentanyl Spray").

3. Fentanyl is a synthetic opioid that is classified as a Schedule II controlled substance and is approximately 100 times more potent than morphine as an analgesic. Because of the risk of misuse, abuse, and addiction associated with prescription products like the Fentanyl Spray, only healthcare professionals who have enrolled in a mandated U.S. Food and Drug Administration ("FDA") program and completed necessary training are permitted to prescribe the Fentanyl Spray.

4. The Fentanyl Spray was approved by the FDA in or about January 2012, solely for the management of breakthrough pain in cancer patients who are already receiving and who are tolerant to opioid therapy for their underlying persistent pain. At all relevant times, the Fentanyl Spray was the only FDA-approved product that Pharma Company-1 had on the market.

### Overview of the Scheme

5. In order to market the Fentanyl Spray, among other things, Pharma Company-1 established a program purportedly to educate healthcare professionals about the Fentanyl Spray (the

"Speaker Program"). Healthcare professionals selected by Pharma Company-1 to act as speakers at these Speaker Programs ("Speakers") were compensated for purportedly providing educational presentations to a peer-level audience of healthcare professionals using a slide presentation that had been preapproved by Pharma Company-1. In reality, however, many of the Speaker Programs that JONATHAN ROPER, the defendant, and the SSPs that ROPER supervised organized and attended were predominantly social gatherings at high-end restaurants in Manhattan that involved no education regarding the Fentanyl Spray and no slide presentation at all.

6. Many of the Speaker Programs also lacked an appropriate audience of healthcare professionals. However, in order to make these Speaker Programs appear legitimate, JONATHAN ROPER, the defendant, instructed the SSPs that he supervised to add the names, signatures, National Provider Identifier numbers, and state license numbers of healthcare professionals who had not, in fact, been present at these Speaker Programs. At times, this information was added to sign-in sheets without the authorization or consent of the healthcare professional whose identifying information was used.

7. Repeat attendees were also commonplace at Speaker Programs organized by the SSPs supervised by JONATHAN ROPER, the defendant. In numerous instances, all of the attendees at certain

Speaker Programs had previously attended Pharma Company-1 Speaker Programs. Because all legitimate Speaker Programs required use of the same preapproved slide presentation, there was no educational purpose for healthcare professionals to attend Speaker Programs on a repeated basis.

8.  While employed at Pharma Company-1 as an SSP from in or about March 2013 through in or about September 2013, JONATHAN ROPER, the defendant, organized and attended sham Speaker Programs led by either of two Manhattan-based doctors ("Doctor-1" and "Doctor-2") that frequently were social in nature and lacked an educational component.

9.  After JONATHAN ROPER, the defendant, was promoted to District Sales Manager in or about October 2013, the SSPs that ROPER supervised continued to organize sham Speaker Programs with ROPER's knowledge. ROPER personally attended many of these sham Speaker Programs that lacked an educational component, including sham Speaker Programs that were organized by the SSPs ROPER supervised and were led by Doctor-1 and Doctor-2, among other healthcare professionals. These Speaker Programs occurred in the vicinity of Manhattan, Connecticut, Rhode Island, New Hampshire, and Massachusetts, among other locations.

10. As the District Sales Manager for the New York City sales territory, JONATHAN ROPER, the defendant, decided how many Speaker

4

Programs would be allocated to each healthcare professional in his sales district on a quarterly basis. ROPER knew that healthcare professionals were selected and compensated as Speakers in order to induce them to prescribe large quantities of the Fentanyl Spray, and ROPER allocated Speaker Programs to healthcare professionals accordingly. As a District Sales Manager, ROPER explicitly instructed the SSPs that he supervised, including via electronic mail, that Speaker Programs would only be allocated to healthcare professionals who prescribed large quantities of the Fentanyl Spray in return.

11. The healthcare professionals who served as Speakers for Pharma Company-1 were highly compensated by Pharma Company-1. By way of example, in 2014, Doctor-1 and Doctor-2 received over approximately $147,000 and $112,000, respectively, in Speaker Program fees from Pharma Company-1. During this same time period, Doctor-1 and Doctor-2 were also among the largest prescribers of the Fentanyl Spray in the United States. In 2014, Doctor-1 and Doctor-2 prescribed, respectively, approximately over $3 million and approximately over $2 million worth of the Fentanyl Spray that was reimbursed by various private insurance companies, and approximately over $1 million worth of the Fentanyl Spray that was reimbursed by Medicare.

12. As a District Sales Manager for Pharma Company-1,

JONATHAN ROPER, the defendant, was also involved in recruiting healthcare professionals in Manhattan and elsewhere to serve as Speakers for Pharma Company-1. Many of these healthcare professionals began to prescribe significant quantities of the Fentanyl Spray after they began receiving Speaker Program fees from Pharma Company-1.

13. JONATHAN ROPER, the defendant, also provided, or caused to be provided, items of value – that bore no relation to any legitimate educational purpose – to healthcare professionals who served as Speakers. These items of value, which were in addition to the significant Speaker Program fees paid to healthcare professionals to induce them to prescribe the Fentanyl Spray, included paying for, among other things, meals, alcoholic drinks, outings to strip clubs, sporting events, and, in one instance, a holiday party for a doctor's entire office staff. These payments were not reported to the federal government, as is required by applicable federal law.

**STATUTORY ALLEGATIONS**

14. From at least in or about March 2013 up to and including in or about December 2015, in the Southern District of New York and elsewhere, JONATHAN ROPER, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an

offense against the United States, to wit, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(B).

15. It was a part and object of the conspiracy that JONATHAN ROPER, the defendant, and others known and unknown, willfully and knowingly would and did offer and pay remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

### Overt Acts

16. In furtherance of this conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. On or about November 14, 2013, JONATHAN ROPER, the defendant, in his capacity as a District Sales Manager for Pharma Company-1, sent an email to other Pharma Company-1 employees, including the SSPs that ROPER supervised, stating, in substance and in part:

> [T]he lack of new RXs is going to bury us and nothing has changed. Unfortunately for many reps, it's going to to [sic] be a sad holiday season and

7

it's out of my control at this point. DONT BE ONE OF THOSE REPS! Almost all of you have speakers, use that to your advantage and repeatedly inform them of one simple guideline for them to follow as [Pharma Company-1] speakers, NO SCRIPTS, NO PROGRAMS. It is a complete waste of time and resources to utilize speakers with no clinical experience.

b. On or about February 20, 2014, ROPER, in his capacity as a District Sales Manager for Pharma Company-1, sent an email to other Pharma Company-1 employees, including the SSPs that ROPER supervised, stating, in substance and in part:

NYC,

Everyone on this team has stepped it up the past week or so. I am extremely proud and optimistic at the movement that has been going on. We MUST keep pushing as hard as we can to get every SSP apart of this team on the board daily! NOW is the time to attain as many RXs as possible going into the NSM [National Sales Meeting]. NYC needs to go into this meeting on fire, and show our entire company that we belong in the top 3 nationally, and aren't just carried by one or two reps.

One week until [National Sales Meeting], and I need everyone on this team to work their relationships. Ask each of your top prescribers to do whatever they can to make you look like an absolute superstar for the next week, especially while we are [at the National Sales Meeting]. This is what reps work all year for, do not be hesitant in asking your docs to give you the business in which you are owed, deserve, and will help in making you shine at [the National Sales Meeting]. Show everyone at [Pharma Company-1] that your time has been well spent and the formula has been followed. All of the breakfasts, lunches, ISPs [Speaker Programs], and top customer service to go along with helping

> provide your docs pts with the best ROO [Rapid-Onset Opioid] product in its class for treating BTCP [breakthrough cancer pain]. This has to be reciprocated to you for all of your hard work! If you have a relationship, asking this of your docs should be one of the easiest things you do as an SSP. You all have claimed to have relationships so this should not be a problem. If you feel that you cannot complete this simple task with the most positive results, then there is no point in attending [the National Sales Meeting].
>
> . . . .
>
> Thanks in advance for all of your efforts, and I ask all of you to please ENSURE that we have the best week of sales we have ever had as a team. The time is now!!
>
> $$$$

    c.    On or about March 28, 2014, ROPER, in his capacity as a District Sales Manager for Pharma Company-1, sent an email to other Pharma Company-1 employees, including the SSPs that ROPER supervised, stating, in substance and in part:

> NYC,
>
> Good luck today, biggest Friday of the quarter is here!! Still 4 days including today to get RXs filled, put more $$ in your pockets and for those of you who haven't met your baseline as of yet, there's still time left! You have all heard it before, LIVE WITH YOUR TOP DOCS, and even more importantly ASK for their business.
>
> We all benefit from having the best ROO [Rapid-Onset Opiod] in its class, that being said, there is no excuse for any of your docs to not take care of you at this crucial time of the quarter. For the first time as a company, we are facing the challenge of meeting our quarterly goal. That being

said, its time for all of your your [sic] top prescribers (esp. SPEAKERS) to give back for all of the hard work, long days and late nights you have spoiled them with. Keep pushing as hard as you all possibly can and remember why today is especially most important being that it will set you up for a few hopeful RXs sat/sun and a HUGE Monday!!!

d. On or about May 6, 2014, ROPER, in his capacity as a District Sales Manager for Pharma Company-1, sent an email to other Pharma Company-1 employees, including the SSPs that ROPER supervised, stating, in substance and in part:

> Where is the ROI [Return on Investment]??!!! All prescribers from this team that are on this list are [Pharma Company-1] speakers. We invest a lot of time, $, blood, sweat, and tears on "our guys" and help spreading the word on treating BTCP [breakthrough cancer pain]. We hire only the best of the best to be apart [sic] of our speaker bureau and dropping script counts is what we get in return? As a team we are lagging behind once again and once again not on pace to meet our quarterly goal. Time for your main guys to step it up and give you the ROI you deserve.
>
> The most common question asked at the conclusion of a speaker program is alway [sic], "doc, how many pts [patients] do you currently have on [the Fentanyl Spray]?" Lets not even discuss what some of these prescribers answers may be but I will tell you right now, not enough!
>
> This is a slap in the face to all of you and is a good indication as to why NONE of you are climbing in the rankings this quarter. DO NOT be afraid to set your expectations and make them crystal clear as to what they are before, during, and after HIRING these priviliged [sic] set of docs who are fortunate enough to be a part of the best speaker bureau in the market in the world of BTCP [breakthrough cancer pain]. Please handle this

10

immediately as funding will not be given out to anymore "let downs" in the future. Thanks.

$$$$

e. On or about January 28, 2015, ROPER, in his capacity as a District Sales Manager for Pharma Company-1, sent an email to other Pharma Company-1 employees, including the SSPs that ROPER supervised, stating, in substance and in part:

> The first month of Q1 is pretty much over and NONE of you are on pace to hit your baselines and/or growing them. (Check your net sales report and do the math)
>
> All of you have speakers so this should not be an issue. If they are not giving their full support and business to you, I have NO PROBLEM getting rid of them and replacing with another speaker who truly supports our drug and helping pts suffering from BTCP [breakthrough cancer pain].
>
> Its time to get back on track, follow the formula, and keep pushing for #1.
> THIS HAS TO START NOW!!
>
> Thanks for the hard work!!

$$$$

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Violation of the Anti-Kickback Statute)

The Grand Jury further charges:

17. The allegations set forth in paragraphs 1 through 13 and 16 of this Indictment are repeated and realleged as if fully set forth herein.

11

18.     From at least in or about March 2013 up to and including in or about December 2015, in the Southern District of New York and elsewhere, JONATHAN ROPER, the defendant, willfully and knowingly offered and paid remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

(Title 42, United States Code, Section 1320a-7b(b)(2)(B), and Title 18, United States Code, Section 2.)

## COUNT THREE
### (Conspiracy to Commit Honest Services Wire Fraud)

The Grand Jury further charges:

19.     The allegations set forth in paragraphs 1 through 13 and 16 of this Indictment are repeated and realleged as if fully set forth herein.

20.     From at least in or about March 2013, up to and including in or about December 2015, in the Southern District of New York and elsewhere, JONATHAN ROPER, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

21.     It was a part and object of the conspiracy that JONATHAN ROPER, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive patients of their intangible rights to their doctors' honest services, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, ROPER, while employed at Pharma Company-1, participated in a scheme to pay bribes and kickbacks to doctors, including Speaker Program fees, in order to induce these doctors to prescribe the Fentanyl Spray, thereby depriving their patients of their intangible rights to their doctors' honest services.

(Title 18, United States Code, Section 1349.)

### COUNT FOUR
### (Aggravated Identity Theft)

The Grand Jury further charges:

22.     The allegations set forth in paragraphs 1 through 13 and 16 of this Indictment are repeated and realleged as if fully set forth herein.

23.     From at least in or about March 2013, up to and including in or about December 2015, in the Southern District of

New York and elsewhere, JONATHAN ROPER, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, without authorization, ROPER used, and aided and abetted the use of, the names, signatures, National Provider Identifier numbers, and state license numbers of doctors and pharmacists on sign-in sheets for Speaker Programs during and in relation to the felony violation charged in Count Three of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(c)(5), and 2.)

### FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

24. As a result of committing the offenses charged in Counts One and Two of this Indictment, JONATHAN ROPER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## FORFEITURE ALLEGATION AS TO COUNT THREE

25. As a result of committing the offense charged in Count Three of this Indictment, JONATHAN ROPER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes, or is derived from, proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

26. If any of the above described forfeitable property, as a result of any act or omission of JONATHAN ROPER, the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

15

United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

        (Title 18, United States Code, Sections 981 and 982;
         Title 21, United States Code, Section 853; and
         Title 28, United States Code, Section 2461.)

_____     _____
FOREPERSON                            JOON H. KIM
                                          Acting United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONATHAN ROPER,

Defendant.

SUPERSEDING INDICTMENT

S2 16 Cr. 542 (WHP)

(18 U.S.C. §§ 371, 1028A(a)(1),
1028A(c)(5), 1349 and 2; 42 U.S.C.
§§ 1320a-7b(b)(2)(B).)

JOON H. KIM
Acting United States Attorney.

A TRUE BILL

Foreperson.